UNITED STATES of America,
Plaintiff-Appellee,

v.

Felipe Moya GARCIA and Balbino
Medina, Defendants-Appellants.

No. 29478.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1971.

Moises Vicente Vela, Harlingen, Tex. (court appointed), for Garcia.

Julius Lucius Echeles, Frederick F. Cohn, Chicago, Ill., for Medina.

Anthony J. P. Farris, U. S. Atty., James Gough, Edward B. McDonough, Jr., Raul A. Gonzalez, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

In June of 1969 Special Treasury Agent Riggs, working out of McAllen, Texas, received a tip from an informant in Mexico that two unidentified men of Latin origin were with appellant Garcia in Mexico and would obtain and attempt to transport into the United States a quantity of marijuana. The informant stated that these individuals would be using a gold colored Ford automobile, bearing New Jersey license plate No. LSX 909, which was presently parked in Hidalgo, Texas. While Agent Riggs had not himself previously worked with this informant, the customs agent in charge of the station had and vouched for the informant's reliability. Consequently, United States Treasury Agents located the gold Ford and instituted a program of surveillance.

At 4:00 P.M. of the first day of surveillance the agents observed a Mexican taxicab cross the international bridge from Reynosa, Mexico, to Hidalgo, Texas, and discharge Heriberto Nunez Soto and Balbino Medina. The pair, after replacing a flat tire, entered the gold Ford and drove off. Continued surveillance of the vehicle led to discovery of the overt acts enumerated in Count 1 of the indictment, the conspiracy count.

The agents followed Medina and Soto in the gold Ford and Garcia and an unidentified man in another car as they drove the two cars in tandem west from Pharr, Texas. About 25 miles west of Pharr and before the tandem reached the town of El Refugio, they stopped the vehicles along the highway and Soto and Garcia switched cars which then placed Garcia and Medina in the gold Ford and Soto and the unidentified man in the other car. The agents observed the gold Ford, now driven by Garcia, as it turned south on a dirt road leading toward the Rio Grande River. The other car, with some of the agents following it, continued west to Rio Grande City, Texas, where it crossed into Mexico.

The gold Ford, which agents did not follow down the dirt road toward the river, but staked out its probable line of return, was sighted as it returned up the dirt road. Garcia left the gold Ford with Medina at the International Bridge in Hidalgo and made his own way back to Mexico. Medina returned to Pharr, Texas, where he and Soto took the gold Ford to a Texaco station and backed it out of the view of the watching agents. The agents, however, were able to see Soto and Medina busy in and around the car. Moreover, the gold Ford had been parked near a beige and white Chevrolet station wagon which the pair entered

and drove to the motel where Soto had a room. Soto and Medina were observed packing the station wagon at 8:45 P.M. that night. They entered the station wagon and, with agents following, drove east to Harlingen, Texas. There they turned north on U.S. Highway No. 77. After a hurried exchange of radio messages, the agents closed in on the car and stopped the vehicle within the city limits of Harlingen. A search of the car revealed a marijuana-like substance. Agents then arrested Soto, Medina and the other occupants of the car with whom we are not presently concerned.

Soto, Medina and Garcia were indicted in a five count indictment.[1] Soto entered a plea of guilty to Count 5 and testified for the prosecution.

### I—BORDER SEARCH

Garcia and Medina in this appeal jointly assert that evidence resulting from the search of the beige and white station wagon should have been suppressed as the fruits of an unlawful search and seizure. The district court was presented with this on a motion to suppress, which it denied. The court ruled that the search was what is commonly referred to as a "border search."[2] Defendants assert that the vehicle, which was stopped some 35 miles from the Mexican border and which had never been seen to cross the border, could not have been validly stopped and searched without a warrant and in the absence of

probable cause. Under the facts of this case we disagree.

A border search is a category of search distinct from other searches and seizures. United States v. Warner, 441 F.2d 821 (5th Cir., 1971); Walker v. United States, 404 F.2d 900 (5th Cir., 1968). All that is constitutionally required is that the officers conducting the border search be within their jurisdiction and have reasonable cause to believe that a person is carrying merchandise unlawfully introduced into the United States. United States v. Poindexter, 429 F.2d 510 (5th Cir., 1970); Morales v. United States, 378 F.2d 187 (5th Cir., 1967). The jurisdiction of customs and other agents guarding the borders is not limited to the geographical boundary lines, nor is their jurisdiction limited to a fixed number of miles inland from the border.

"Not only is the Customs agents' right to conduct a border search broad, but also the term 'border' is itself elastic. United States v. Glaziou, *supra*; Marsh v. United States, *supra*. The 'border' includes not only the actual border crossing points but also a reasonable extended geographic area in the immediate vicinity of the crossing point. United States v. Glaziou, *supra*. The 'right to arrest by Customs' agents doesn't cease simply because the suspect may get his foot across on this side of bridge * * *

1. The indictment charged the trio in Count 1 with a conspiracy to violate 21 U.S.C. § 176a. Counts 2, 3 and 4 charged them with substantive offenses under 21 U.S.C. § 176a. Count 5, which charged violation of 26 U.S.C. § 4744(a) (2) was dismissed as to Garcia and Medina.

2. 19 U.S.C.A. § 482 provides:
"Any of the officers or persons authorized to board or search vessels, may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in pos-

session or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

it extends to the immediate area.' Marsh v. United States, *supra*. Moreover, simply because Customs agents inspected a person or his vehicle at the crossing point does not mean that they may not conduct a second border search within the immediate vicinity of the crossing point: a person is not immune from further examination by Customs agents 'merely because he "may momentarily escape detection and pass safely through the first Custom's check."' Thomas v. United States, *supra*; *see also* Morales v. United States, *supra*. On the other hand, the Supreme Court long ago recognized that once a traveler's entry into the country becomes complete, he is entitled to the complete protection of the Fourth Amendment:

> those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.

Carroll v. United States, 1925, 267 U. S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543; *see also* Thomas v. United States, *supra*; Marsh v. United States, *supra*. Therefore when Customs agents choose to conduct a border search outside the immediate vicinity of a border crossing point, the legality of the search will usually depend upon such factors as the distance of the search from the crossing point, the time elapsed since crossing, and the circumstances upon which the agents base their suspicions. McGlone v. United States, *supra*; Alexander v. United States, *supra*; Marsh v. United States, *supra*."

United States v. Warner, 441 F.2d 821, 832 (5th Cir., 1971).

The question in a case such as this one is the reasonableness of the agents' beliefs. We have already gone into some length in reciting the agents' activities in keeping the gold Ford and its occupants under surveillance. The agents, at the time of the stop, had received a tip, observed appellants repeatedly change cars, and bring one car down toward the Rio Grande and engage in other furtive activities.[3]

From the evidence presented we hold that the district court properly denied the joint motions to suppress.

## II—SEPARATE POINTS OF APPEAL

### A. *Garcia*

Appellant Garcia has additionally asserted that the district court erred in overruling his motion for a mistrial based on statements by Agent Riggs while a witness that he had seen a narcotics dealer running around, and that the dealer was not defendant Medina. This, Garcia asserts, required a mistrial under the rationale of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The record here reveals, however, that Riggs was testifying from his personal knowledge and was not, as in *Bruton*, testifying to a co-defendant's out-of-court confession. Garcia's privilege to refrain from testifying was not compromised, nor was he denied an opportunity to cross-examine the declarant. Compare Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1964).

Garcia further asserts a general insufficiency of the evidence on Counts 2, 3 and 4. We have considered this point, but viewing the evidence in a light most favorable to the prosecution, Glasser v.

---

**3.** Activities which may not of themselves lend to a finding of probable cause, cf. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), may nevertheless provide sufficient basis for a border agent's reasonable suspicion. Thomas v. United States, 372 F.2d 252 (5th Cir., 1967); King v. United States, 348 F.2d 814 (9th Cir., 1965), cert. den., 382 U.S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965).

United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find this point to be wanting.

### B. *Medina*

■■ Appellant Medina asserts that the district court erred when it failed to charge the jury on the law of entrapment. Considering the question of when instructions on a defense theory should be given, this court in Strauss v. United States, 376 F.2d 416 (5th Cir., 1967), stated:

" 'It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence.' Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 13–14. [emphasis added]. We find no requirement that a requested charge encompass, in the trial judge's eyes, a believable or sensible defense. The judge is the lawgiver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent. The jury is the fact-finder. If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible. Bryan v. United States, 5 Cir. 1967, 373 F.2d 403. The judge must, therefore, be cautious and unparsimonious in presenting to the jury all of the possible defenses which the jury may choose to believe. We hold that where the defendant's proposed charge presents, when properly framed, a valid defense, and where there has been some evidence relevant to that defense adduced at trial, then the trial judge may not refuse to charge on that defense. In Tatum v. United States, 1950, 88 U.S.

App.D.C. 386, 190 F.2d 612, 617, the D.C. Circuit said:

" 'We do not intend to characterize the case for the defense as either strong or weak. That is unnecessary, for "in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. He is entitled to have such instructions even though the sole testimony in support of the defense is his own." '

Levine v. United States, 1958, 104 U.S.App.D.C. 281, 261 F.2d 747; Perez v. United States, supra; Smith v. United States, 6 Cir. 1956, 230 F.2d 935; United States v. Indian Trailer Corp., 7 Cir. 1955, 226 F.2d 595. See Merrill v. United States, 5 Cir. 1964, 338 F.2d 763; Koontz v. United States, 5 Cir. 1960, 277 F.2d 53.

"The proper standard was not met here. The jury did not have to believe the defenses, but it should have been given the opportunity. This is true even if the defense is fragile. A defendant cannot be shortchanged nor his jury trial truncated by a failure to charge."

This case, however, presents one instance when a refusal to charge on a defense theory was proper. The test is whether there is some evidence to support the defense theory. The record in this case is barren of evidence which would support a defense of entrapment. All that is demonstrated are the speculations of a defense attorney as to the possibility that it was a government agent who sold the marijuana involved in this prosecution. The witness, whose cross-examination is urged as testimonial foundation for a defense of entrapment, denied a knowledge of the identity of the seller and admitted only a speculative possibility of entrapment. The testimony here simply did not warrant an instruction on entrapment. Cf. Grace v.

United States, 4 F.2d 658 (5th Cir., 1925), cert. den., 268 U.S. 702, 45 S.Ct. 637, 69 L.Ed. 1165 (1924).

The remaining assertions of appellants are without merit and further discussion is unnecessary.

The judgment of the district court is affirmed.