**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clifton Ray MIDDLETON,**
**Defendant-Appellant.**

**Nos. 81–5321, 81–5640.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1982.

---

Richard R. Booth, Arthur W. Tifford, Miami, Fla., for defendant-appellant.

Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by

Before HILL and CLARK, Circuit Judges, and SCOTT*, District Judge.

JAMES C. HILL, Circuit Judge:

This case consists of an appeal from convictions entered against the defendant for the crimes of importation of marijuana, possession of marijuana, resisting customs officers, and bail jumping.

The defendant, Clifton Ray Middleton, a member of the Ethiopian Zion Coptic Church, flew into Miami from Jamaica on April 11, 1972. Upon his arrival, the Customs Inspector asked Middleton to accompany him to a room for a secondary search of his baggage. Mr. Middleton then fled the customs enclosure, pursued by a number of customs personnel, and was caught. The defendant testified that he slipped and fell shortly after reaching the street and was set upon by several men as he tried to get up. Other evidence indicates that upon his capture, the defendant fought off the law enforcement officers by flailing his arms, kicking his feet, and squirming. Middleton continued this behavior as he was taken into the search room and later across the street to the public safety department. Marijuana was found in the defendant's possession and the defendant was taken into custody. On April 14, 1972, the defendant was released on a $10,000 personal recognizance bond and was advised at that time that he was required to report to the public defender three times per week. Middleton complied with this condition until the week ending May 5, 1972.

On April 20, 1972, a federal grand jury returned a seven count indictment against Middleton. Count I charged the defendant with importation of marijuana, a Schedule I controlled substance in violation of 21

designation.

U.S.C. §§ 952(a) and 963. Count II charged the defendant with possession of marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841 and 846. Counts III through VII charged the defendant with assaulting, resisting, or impeding certain customs officers in violation of 18 U.S.C. § 111.

The defendant was arraigned on May 2, 1972 at which time the magistrate announced his trial date was scheduled for May 22, 1972. His attorney at that time, William Stiles, testified that he had numerous discussions with the defendant regarding the trial date. Middleton did not contact the public defender's office from the day he was arraigned or any time thereafter prior to the trial date. Middleton failed to appear in court when his case was called for trial on May 22, 1972. On February 1, 1973, a federal grand jury indicted the defendant for bond jumping under 18 U.S.C. § 3150.

The defendant filed a motion to dismiss on January 16, 1980, alleging that the statutory prohibitions pertaining to marijuana are unconstitutional per se. Middleton also asserted that the statutory prohibitions were unconstitutional as applied to him as a member of the Ethiopian Zion Coptic Church. The trial judge denied this motion. Trial commenced on both indictments on February 11, 1981. The jury found the defendant guilty under count I; not guilty under count II of possession with the intent to distribute marijuana, but guilty of simple possession; and guilty under counts IV, V, and VI. The judge directed a verdict of not guilty on count III and the jury acquitted Middleton on count VII. The trial judge sentenced the defendant to nine months imprisonment on counts I and II to be served concurrently. He also sentenced the defendant to nine months custody on counts IV through VI to run concurrently with each other but consecutively to the sentence imposed for counts I and II. The trial judge then sentenced the defendant to a one year term of imprisonment for bond jumping which was to run consecutively to the two other sentences.

In this appeal, the defendant raises four issues. First, the defendant argues that the classification of marijuana as a Schedule I controlled substance under 21 U.S.C. § 812(c)(10) (1976) is unconstitutional as an arbitrary and irrational classification. Second, Middleton asserts that he is a member of the Ethiopian Zion Coptic Church; that this is a religion within the meaning of the first amendment; and that the use of marijuana is an indispensible part of this religion. Consequently, Middleton argues that the application of the statute in this case would violate the free exercise clause of the first amendment. Third, the defendant argues that the trial court erred in refusing to instruct the jury on the defendant's theory of self-defense since the facts reasonably supported that defense to counts III through VII. Finally, Middleton contends that the evidence presented at trial was insufficient to support his conviction for bail jumping. We disagree with all of the above contentions and affirm the defendant's convictions on all counts.

## I  Classification of Marijuana as a Schedule I Controlled Substance

■ Federal statutes are presumptively valid unless it be shown that the statute in question bears no rational relationship to a legitimate legislative purpose. *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938) ("where the legislative judgment is drawn in question, [judicial inquiries] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it"). Recognizing this basic doctrine, Middleton nevertheless argues that this court should declare the congressional classification of marijuana as a Schedule I controlled substance

unconstitutional as arbitrary and irrational.[1]

Under 21 U.S.C. § 812 (1976), Congress has established five schedules of controlled substances. Subsection (b) of this statute requires that a drug or other substance placed in Schedule I must (a) have a high potential for abuse, (b) have no "currently accepted medical use in treatment in the United States," and (c) must lack "accepted safety for use ... under medical supervision." *Id.*

At the hearing on the defendant's motion to dismiss, the defendant presented expert testimony that marijuana does not satisfy any of the Schedule I requirements. For example, Middleton called Dr. Thomas Ungerleider, an associate professor of psychiatry at UCLA, who testified that his research had led him to conclude that marijuana does not satisfy any of the three Schedule I requirements. In an effort to further support his position, Middleton called other witnesses including Robert Randall, a glaucoma sufferer, who testified that he was using marijuana to treat his loss of vision. Based on this evidence, the defendant argues that this court should substitute its judgment for that of Congress and reclassify marijuana.

■ This evidence, however, is not sufficient to convince this court that it should interfere with the broad judicially-recognized prerogative of Congress. In rejecting a similar argument urging the judicial reclassification of cocaine, the Court of Appeals for the Ninth Circuit recognized that a court must limit its inquiry to whether a legislative classification or a refusal to reclassify is irrational or unreasonable. *United States v. Alexander,* 673 F.2d 287 (9th Cir. 1982). In *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974) the Supreme Court stated that "legislative classifications need not be perfect or ideal," 414 U.S. at 428, 94 S.Ct. at 707, and that "[w]hen Congress undertakes to

act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation, even assuming, *arguendo,* that judges with more direct exposure to the problem might make wiser choices." *Id.* at 427, 94 S.Ct. at 706.

■ In enacting the Drug Abuse Prevention and Control Act of 1970, Congress explicitly recognized:

The extent to which marihuana should be controlled is a subject upon which opinions diverge widely. There are some who not only advocate its legalization but would encourage its use; at the other extreme there are some States which have established the death penalty for distribution of marihuana to minors.

H.R.Rep.No.91–1444, 91st Cong., 2d Sess., 12, *reprinted in* 1970 U.S.Code Cong. and Ad.News 4566, 4577. In this case, Middleton has failed to produce any evidence that the congressional classification is unreasonable or irrational. The determination of whether new evidence regarding either the medical use of marijuana or the drug's potential for abuse should result in a reclassification of marijuana is a matter for legislative or administrative, not judicial, judgment. *See United States v. Kiffer,* 477 F.2d 349 (2d Cir.), *cert. denied,* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973); *United States v. LaFroscia,* 354 F.Supp. 1338 (S.D. N.Y.), *aff'd,* 485 F.2d 457 (2d Cir. 1973).

The Act contains a mechanism by which evidence such as that on which the defendant relies may be presented to the attorney general in order to determine whether a particular drug should be reclassified. *See* 21 U.S.C. § 811 (1976). Faced with the issue of whether to compel reclassification, courts have approved of this mechanism as a means of properly evaluating any new evidence. *See United States v. Alexander,* 673 F.2d 287 (9th Cir. 1982); *United States v. Erwin,* 602 F.2d 1183 (5th Cir. 1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62

---

1. Congress initially placed marijuana in Schedule I. Congress created the administrative procedure discussed at pages 823–24 *infra* by which changes in scheduling can be effected.

*National Organization for the Reform of Marijuana Laws v. Drug Enforcement Agency,* 182 D.C.App. 114, 559 F.2d 735, 737–38 (1977).

L.Ed.2d 752 (1980); *National Organization for the Reform of Marijuana Laws v. Drug Enforcement Agency,* 182 D.C.App. 114, 559 F.2d 735, 737–38 (1977) ("Recognizing that the results of continuing research might cast doubts on the wisdom of initial classification assignments, Congress created a procedure by which changes in scheduling could be effected."); *United States v. Pastor,* 557 F.2d 930, 941 (2d Cir. 1977) ("the necessity for speedy, detailed and expert agency action in the area of drug technology cannot be disputed").

The record does not demonstrate that the present classification of marijuana is either arbitrary or irrational. Consequently, any reclassification of marijuana is a matter for legislative or administrative determination.

## II  *Free Exercise Clause*

Middleton also asserts that the federal statutes prohibiting the importation and possession of marijuana, as applied in this case, violate the free exercise clause of the first amendment of the United States Constitution. In support of this assertion, Middleton argues that he is a dedicated member of the Ethiopian Zion Coptic Church, that this church is a religion within the meaning of the first amendment, and that the use of marijuana is an essential part of his religious practice. In order to succeed, the defendant must prove both that the Ethiopian Zion Coptic Church is a religion within the meaning of the first amendment and that the statutes in question do not serve a compelling governmental interest.

The defendant argues that the strict daily regimen of the Coptic community in Jamaica and its focus on prayer services in which marijuana is an essential element conclusively demonstrate that the Ethiopian Zion Coptic Church is a religion within the protections of the first amendment. Assuming without deciding that the Ethiopian Zion Coptic Church is a religion within the

amendment's protections,[2] we hold that any interest of the defendant protected by the free exercise clause is outweighed by the compelling governmental interest in regulating and controlling the use of marijuana and its distribution in the United States. The free exercise clause "embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The Supreme Court has emphasized on numerous occasions that actions and practices are not absolutely protected from governmental regulation merely because the actor classifies these actions as "religious." *See, e.g., United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (social security taxes may be constitutionally imposed on persons who object on religious grounds to the payment of taxes to support public insurance funds); *Davis v. Beason,* 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890); *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878).

In *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court reversed the conviction of an Amish farmer who had been convicted of violating Wisconsin's compulsory school attendance law. The Court recognized the interest of the state regarding basic education, but held that the state interest is "not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the free exercise clause of the first amendment . . . ." *Id.* at 214, 92 S.Ct. at 1532. "The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance

---

**2.** Although we express no view as to whether the Ethiopian Zion Coptic Church is a religion for purposes of first amendment analysis, we note that other courts have held that any belief that is "arguably religious" is generally accorded protection, provided that the adherent is sincere in his belief and acts upon this belief in good faith. *Compare International Soc'y for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430 (2d Cir. 1981) *with United States v. Kuch,* 288 F.Supp. 439 (D.D.C.1968).

legitimate claims to the free exercise of religion." *Id.* 215, 92 S.Ct. at 1533. The Court examined the Amish's interest in maintaining its community structure and the state's interests in preparing citizens for effective and intelligent participation in the political system and in preparing self-reliant and self-sufficient participants in society. The Court then concluded that the state interests would not be sufficiently advanced by requiring Amish school children, who were enrolled until the completion of a basic education, to attend school for an additional two years. *Id.* at 222, 92 S.Ct. at 1536.[3]

Middleton urges that the court analogize between the structure of the Amish and Coptic communities and that *Yoder* therefore should control our disposition of the case at bar. However, even if we assume that such an analogy is proper (a contention upon which the court expresses no opinion), we find a difference in the nature of the governmental interests involved in the two cases. Unlike the state interest advanced in *Yoder,* the interest advanced by the government in the case at bar is compelling and would be substantially harmed by a decision allowing members of the Ethiopian Zion Coptic Church to possess marijuana freely. Congress has strongly and clearly expressed its intent to protect the public from the obvious danger of drugs and drug traffic. *See* 21 U.S.C. § 801(2) (1976). Unquestionably, Congress can constitutionally control the use of drugs that it determines to be dangerous, even if those drugs are to be used for religious purposes. *United States v. Hudson,* 431 F.2d 468, 469 (5th Cir. 1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 575, 27 L.Ed.2d 624 (1971) ("the use of drugs as part of religious practice is not constitutionally privileged"); *Native American Church of New York v. United States,* 468 F.Supp. 1247 (S.D.N.Y.1979), *aff'd,* 633 F.2d 205 (2d Cir. 1980); *Randall v. Wyrick,*

441 F.Supp. 312 (W.D.Mo.1977); *United States v. Kuch,* 288 F.Supp. 439 (D.D.C. 1968).

Extended to its logical conclusion, appellant's argument would protect all drugs, not just marijuana, if any religious group chose to use them as a religious sacrament. As this court noted in *Leary v. United States,* 383 F.2d 851 (5th Cir. 1967), *rev'd. on other grounds,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), both the fact of legislation and the severity of the penalties provided in statutes such as the one in question clearly evidence "the grave concern of Congress" in controlling the use of drugs. *Id.* at 859. Moreover, the harm of the particular drug in question is not relevant in determining the degree of protection afforded by the free exercise clause to the defendant's actions.

> Congress had demonstrated beyond doubt that it believes that marihuana is an evil in American society and a serious threat to its people. It would be difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to possess and traffic in this drug for religious purposes. For all practical purposes the anti-marihuana laws would be meaningless, and enforcement impossible. The danger is too great, especially to the youth of the nation ... for this court to yield to the argument that the use of marihuana for so-called religious purposes should be permitted under the Free Exercise Clause. We will not, therefore, subscribe to the dangerous doctrine that the free exercise of religion accords an unlimited freedom to violate the laws of the land relative to marihuana.

*Id.* at 860–61. We cannot agree that the free exercise clause embodies the type of protection urged by the defendant in view of the clearly articulated and compelling

---

**3.** [T]he value of all education must be assessed in terms of its capacity to prepare the child for life. It is one thing to say that compulsory education for a year or two beyond the eighth grade may be necessary when its goal is the preparation of the child for life in

modern society as the majority live, but it is quite another if the goal of education be viewed as the preparation of the child for life in the separated agrarian community that is the keystone of the Amish faith. *Id.*

governmental interests in regulating the possession and distribution of drugs.

In support of his argument, Middleton analogizes to various state court decisions which have held that the use of peyote by the Native American Church is constitutionally protected. This Court, however, remains bound by the *Leary* precedent and is not bound by these state court decisions.

In view of all of these factors, this court cannot agree with the defendant's argument that his possession of marijuana is constitutionally protected under the first amendment.

### III Trial Court's Failure to Charge the Jury Regarding Defendant's Defense of Self-Defense

■ Middleton also argues that the trial court erred in refusing to instruct the jury on the defendant's theory of self-defense since the facts reasonably support such a defense against the charges that the defendant willfully resisted the customs officers. So long as there is some evidence relevant to the issue or the defense asserted, a trial court must instruct a jury regarding this issue and cannot determine the existence of such a defense as a matter of law. *United States v. Garcia,* 452 F.2d 419 (5th Cir. 1971); *Tatum v. United States,* 88 U.S.App.D.C. 386, 190 F.2d 612 (1951). As this court stated in *Strauss v. United States,* 376 F.2d 416 (5th Cir. 1967):

'. . . [T]he defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence.' *Perez v. United States,* (5th Cir. 1961), 297 F.2d 12, 13–14 [emphasis added]. We find no requirement that a requested charge encompass, in the trial judge's eyes, a believable or sensible defense. The judge is the law-giver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent. . . . The judge must, therefore, be cautious and unparsimonious in presenting to the jury all of the possible defenses which the jury may choose to believe. We hold that

where the defendant's proposed charge presents, when properly framed, a valid defense, and where there has been some evidence relevant to that defense adduced at trial, then the trial judge may not refuse to charge on that defense.

*Id.* at 419.

■ The facts of this case, however, do not support the defendant's contention that he was entitled to a charge on the theory of self-defense. Generally, self-defense is a defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger. Lafave and Scott, Handbook on Criminal Law, 391 (1972). The record does not contain any evidence which would give rise to a reasonable expectation that Middleton was in immediate danger of unlawful bodily harm. The government's witnesses testified that the defendant ran from the customs enclosure and when apprehended continually fought off the officers. The defendant himself never testified to having been struck, kicked or assaulted; he did, however, testify that he had run from the customs enclosure and that he was aware that he was being detained by law enforcement officers. We do not see how any force used by the apprehending officers under these circumstances could have given rise to a reasonable apprehension that such force was unlawful. Consequently, we hold that the trial court was correct in refusing to instruct the jury as to the defendant's theory of self-defense.

### IV Sufficiency of Evidence Regarding Conviction For Bail Jumping

■ Middleton also argues that the evidence presented at trial was legally insufficient to support his conviction for bail jumping in violation of 18 U.S.C. § 3150. He bases this contention on the statutory requirement that the government prove beyond a reasonable doubt that he had "willfully" failed to appear. Appellant's brief at 51. In reviewing the jury verdict of guilty,

we cannot try the case *de novo* but are limited to determining whether sufficient evidence supports the verdict. *United States v. Wayman,* 510 F.2d 1020 (5th Cir.), *cert. denied sub nom. Moore v. United States,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). In examining the evidence, we must view it in the light most favorable to the government and make all reasonable inferences and credibility choices as will support the jury's verdict of guilty. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Squella-Avendano,* 478 F.2d 433 (5th Cir. 1973). In other words, we must sustain the verdict unless we find that a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt under the evidence. *United States v. Ocanas,* 628 F.2d 353 (5th Cir. 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).

In the case at bar, William Stiles, the defendant's attorney at the arraignment, testified that the magistrate announced the trial date at the arraignment and that the defendant was present. Stiles pointed out to the jury where the defendant was standing in relation to the judge when the date was announced. He also testified that he had numerous conversations with the defendant based upon the set trial date. Based on this evidence we cannot agree with the defendant's contention that a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt.

In view of our disposition of the issues discussed, the defendant's convictions are

AFFIRMED.