Lawrence J.S. WHYTE, Appellant,

v.

UNITED STATES, Appellee.

No. 83–63.

District of Columbia Court of Appeals.

Argued Nov. 29, 1983.

Decided Feb. 6, 1984.

J.E. McNeil, Washington, D.C., for appellant. Richard Manning Ricks, Washington, D.C., appointed by the court, was on the brief for appellant.

Linda D. Turner, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

MACK, Associate Judge:

█ Appellant raises an issue of first impression before this court. He argues that, because of his religious tenets, he cannot be prosecuted under the District of Columbia's drug laws for criminal possession and distribution of marijuana because to do so would violate his rights under the free exercise clause of the first amendment.[1] We hold under the facts of this case that the District of Columbia's interest to protect society by the enforcement of its drug laws constitutes a compelling governmental interest which outweighs any interest of appellant protected under the free exercise clause.

On October 12, 1982, a search warrant was executed for appellant's home in Northwest, Washington. An envelope containing marijuana and a jar with marijuana seeds were seized. Appellant was subsequently charged with criminal possession and distribution of a controlled substance, marijuana, in violation of D.C.Code § 33–541 (1983 Supp.).

On January 3, 1983, appellant moved to dismiss the charges against him as violative of the free exercise clause. In support of his motion, appellant testified that he was a member of the Twelve Tribes of Israel—more commonly known as the Rastafarians—and that "it is ordained for [him] to indulge in marijuana."[2] The trial court denied the motion to dismiss. It found that the government's interest in regulating marijuana and curtailing its accessibility in the community outweighed appellant's interest in using marijuana as part of his religious practices. Thereupon appellant pled guilty to the charge of possession, and the government entered a *nolle prosequi* on the charge of distribution.[3] The trial court sentenced appellant to sixty days in jail, then suspended the sentence and imposed a one year term of probation. This appeal followed.

I

█ Fundamental to our understanding of first amendment jurisprudence[4] has been the recognition that the amendment encompasses the "freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be." *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Thus, despite the amendment's proscription that no law is to deny the free exercise of religion, "[n]ot all burdens on religion are unconstitutional." *United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982) (citing *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1879)). In order to justify a limitation by the government on religious liberty under the free exercise clause, the government must show it has an interest which overrides interests

---

1. Appellant raises another issue for the first time on appeal. In reliance upon *Ravin v. Alaska,* 537 P.2d 494, 511 (Alaska 1975), he contends that his use of marijuana in his home is constitutionally protected and that any intrusion therein by the state infringes upon his right to privacy. *Ravin* focuses primarily upon a right to privacy amendment in the Alaskan constitution, *id.* at 500–01, 504 and as such, we do not find it instructive in resolving the issue before us. We reject the argument.

2. In response to defense counsel's question as to whether a reference in the Bible "commanded" him to use marijuana in his sacrament when reading the Bible, appellant stated:

You use the word "command." That is a harsh term, but, as a Rastafarian, let me liken it to another religion. Like the Catholics. They drink wine and eat bread in Holy Communion. It is the same thing with us and marijuana. Marijuana brings us into a holier communion with our concept of the just God, and Judah is inside of us and is the one that brings us nearer to communion.

3. The record indicates that the guilty plea included a stipulated trial, apparently conducted to preserve appellant's right to appeal.

4. The first amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

protected under the free exercise clause. *Lee, supra,* 455 U.S. at 256–58, 102 S.Ct. at 1054–1055; *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). Essentially then, "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Yoder, supra,* 406 U.S. at 215, 92 S.Ct. at 1533. Such paramount interests are present in the case herein.

We assume, for purposes of our inquiry, that the Twelve Tribes of Israel is a bona fide religion within the meaning of the first amendment and that appellant fully subscribes to its doctrines. And, it is not disputed that the pertinent drug laws of the District of Columbia criminalize appellant's possession of marijuana irrespective of whether it is used as a religious sacrament.

In weighing the particular interests of the government and appellant, we are persuaded by the reasoning of the decision in *United States v. Kuch,* 288 F.Supp. 439 (D.D.C.1968), where Judge Gesell rejected defendant's argument that the free exercise clause protects the religious practices of the Neo-American Church involving the use, possession, and sale of both marijuana and LSD. In so ruling, the trial court stated that Congress' interest in regulating the use and distribution of drugs, together with the public's interest in the full enforcement of its drug laws, was of sufficient magnitude to outweigh defendant's interest in the free exercise of his religious practices. *Id.* at 445–46. Significantly, other jurisdictions confronting the issue have relied upon *Kuch* to reach similar conclusions. Thus, for example, the eleventh circuit in *United States v. Middleton,* 690 F.2d 820, 825 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1497, 75 L.Ed.2d 929, 91 S.Ct. 575, 27 L.Ed.2d 624 (1983) held that the free exercise clause of the first amendment does not protect the possession of marijuana by a member of the Ethiopian Zion Coptic Church in light of the government's compelling interest in controlling the use of drugs. *Accord United States v. Hudson,* 431 F.2d

468, 469 (5th Cir.1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 575, 27 L.Ed.2d 624 (1971) ("the use of drugs as part of religious practice is not constitutionally privileged"); *Randall v. Wyrick,* 441 F.Supp. 312, 315–16 (W.D.Mo.1977) (interest of a member of the Aquarian Brotherhood Church in using marijuana and LSD as sacraments is outweighed by Missouri's interest in protecting the public from drug-related problems); *State v. Rocheleau,* 142 Vt. 61, 64, 451 A.2d 1144, 1148 (1982) (state's interest in regulating the use of marijuana prevails over appellant's interest to use the drug in the practice of Tantric Buddhism). Relying upon the reasoning of these cases, we find that identical governmental interests operate with respect to the District of Columbia drug laws.

■ Turning specifically to those laws, we note that in 1981, the Council of the District of Columbia prepared legislation to revamp the then existing District laws governing the use of controlled substances. The new legislation, D.C.Law No. 4–29, referred to as the District of Columbia Uniform Controlled Substances Act of 1981 (hereinafter CSA), became effective August 5, 1981. D.C.Code §§ 33–501–567 (1983 Supp.). The report of the District of Columbia Council states that one primary purpose of the proposed bill was to allow for more efficient control over the problems of drug abuse and drug dependence, and to provide law enforcement with more efficient tools to combat these problems. Council of the District of Columbia, Report on Bill 4–123, April 8, 1981, at 1–5. It has become tragically obvious that the symptoms of drug abuse permeate all aspects of our society. We believe that this comprehensive legislation with wide-ranging goals, evidences the serious and compelling concern of the Council to redress drug-related problems.

■ Marijuana is defined in the CSA, D.C.Code § 33–501(3)(A), and is listed as a controlled substance. D.C.Code § 33–522. It is true that of the five different schedules created by the CSA for classifying

controlled substances based upon their potential dangerousness, marijuana is in Schedule V—the schedule reserved for substances with the lowest potential for abuse. D.C.Code § 33–521. Nevertheless, we choose not to accept appellant's suggestions that in balancing competing interests, we take into account evidence minimizing dangers from marijuana abuse. This court will not substitute its judgment for that of the legislature where, as here, the challenged legislation has seen fit to control a substance on a rational basis.[5] *Cf. United States v. Carolene Products Co.,* 304 U.S. 144, 153, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Moreover, we are in agreement with the eleventh circuit in *Middleton, supra,* that "the harm of the particular drug in question is not relevant in determining the degree of protection afforded by the free exercise clause to the defendant's actions." 690 F.2d at 825.

We do not think the Supreme Court's opinion in *Wisconsin v. Yoder, supra,* requires a different result. In *Yoder,* the Court held that convictions of members of the Old Order Amish religion for violating Wisconsin's compulsory school attendance law were invalid under the free exercise clause. The Court found, after balancing competing interests, that the state's interest in compulsory school attendance was not sufficiently compelling to warrant an intrusion upon religious practices which had been in existence for almost 300 years. 406 U.S. at 218–19, 227, 92 S.Ct. at 1534–35. In *Yoder,* however, the Court noted that the case before it was "not one in which any harm ... to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred." *Id.* at 230, 92 S.Ct. at 1540 (footnote omitted). This language provides unassailable support for the result we reach, for plainly enforcement of the CSA directly operates to protect the public

from the dangers of drug abuse and its repercussions. *See Middleton, supra,* 690 F.2d at 824–25.

Finally, appellant urges that the cases holding that the free exercise clause protects the use of "peyote" by members of the Native American Church in their religious practices, should control this case. *E.g., Whitehorn v. State,* 561 P.2d 539 (Okl.1977); *State v. Wittingham,* 19 Ariz.App. 27, 504 P.2d 950 (1973), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974); *People v. Woody,* 61 Cal.2d 889, 394 P.2d 813, 40 Cal.Rptr. 69 (1964). Since we are not bound by any of the cases relied upon by appellant, we intimate no view as to how we would rule if confronted with an identical situation. We note, nevertheless, that there are fundamental reasons for distinguishing the unique treatment afforded the use of peyote by members of the Native American Church from that of the treatment afforded the use of marijuana by members of different religions. *See, e.g., United States v. Middleton, supra,* 690 F.2d at 826; *Native American Church of New York v. United States,* 468 F.Supp. 1247, 1249–51 (S.D.N.Y. 1979), *aff'd,* 633 F.2d 205 (2d Cir.1980); *United States v. Kuch, supra,* 288 F.Supp. at 448–50. Moreover, it is significant that federal regulation exempts from prosecution the use of peyote in religious ceremonies of the Native American Church. 21 C.F.R. § 1307.31 (1983).[6]

■ In conclusion, after balancing appellant's interests under the free exercise clause of the first amendment against the District's interest in the enforcement of the CSA, we find that the governmental interest is compelling and paramount to appellant's interest.

*Affirmed.*

---

**5.** We find added force for this position in light of the fact that the CSA empowers the Mayor to "add substances to or delete or reschedule all substances ...." D.C.Code § 33–511. There is, therefore, a statutory mechanism to remedy inappropriate categorization.

**6.** At least one court has indicated that the exemption for peyote would be applicable to a bona fide religious organization other than the Native American Church. *Native American Church of New York v. United States, supra,* 468 F.Supp. at 1251.