Jebron NESBETH, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CM–873.

District of Columbia Court of Appeals.

Argued March 9, 2005.

Decided March 24, 2005.

Ian A. Williams for appellant.

Edward A. O'Connell, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

Appellant was found guilty after a bench trial of simple possession of marijuana, a conviction that resulted from his arrest for motor vehicle violations and an ensuing search of his person, which yielded a small quantity of marijuana. On appeal, his main contention is that the trial judge erroneously barred him from asserting a defense under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (2005) (the RFRA or the Act), based on his claim that he is an adherent of the Rastafarian religion and that marijuana use is a sacrament of that faith. Our consideration of this issue, however, is limited to plain error review because appellant did not adequately present the statutory claim—as distinct from one under the First Amendment—to the trial judge. Applying plain error analysis to the RFRA claim, and rejecting as well appellant's related arguments for reversal, we affirm the conviction.

I.

Not until his opening statement did appellant signal his intent to defend on grounds of his religious affiliation. There, he told the trial judge through his counsel that he had been a practicing Rastafarian since childhood, that "cannabis is used as a sacrament" in that religion, and that his possession of the marijuana at the time of his arrest was in conjunction with that use. He asserted that his use of the drug was "essential to the free exercise [of] his religion[, and t]hat he ha[d] an absolute right under the First Amendment of the Constitution to so practice this religious faith." When the trial judge (sitting as trier of fact) interrupted and asked what authority appellant had for the defense, he responded by citing *United States v. Bauer*, 84 F.3d 1549 (9th Cir.1996). The judge asked if he had case support from this jurisdiction or the Supreme Court, to which appellant replied that he "merely ha[d] the First Amendment [of] the Constitution of the United States." Displeased with appellant's failure to notify her of the issue until opening statement, the judge directed the prosecution to begin its testimony regarding the arrest and discovery of the marijuana.

At the end of the day's testimony, the judge informed the parties that her own research had revealed a case, *Whyte v. United States,* 471 A.2d 1018 (D.C.1984), relevant to the First Amendment issue. No further discussion of the point took place before adjournment. At the start of the next court day, however, the judge reminded defense counsel that his "California case [*Bauer, supra*] ... was not binding, of course," and that besides the *Whyte* case from this court, she had found a controlling Supreme Court decision, *Employment Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In light of these decisions, she stated, appellant's asserted religious use of marijuana "is not a viable defense based on anything you've said to me so far." Appellant sought to distinguish *Smith* as well as *Whyte* by arguing that he was "challenging [his prosecution] not only under the First Amendment, but under the due process [clause] of the Fifth Amendment, as well as [that clause's] assurance of equal protection of law," inasmuch as appellant was "a Jamaican Rastafarian," part of "a discrete and insular minority ... unable to vote." Consequently, he said, "this ... is a different case, with different considerations, requiring a different legal analysis." Unpersuaded by the asserted difference, the judge rejected the defense in light of *Smith* and *Whyte.*

## II.

In this court, appellant makes the threefold argument that the trial judge erroneously "preclu[ded his] religious privilege defense ... in contravention of the [RFRA], the Free Exercise Clause of the First Amendment[,] and the [e]qual [p]rotection and [d]ue [p]rocess" components of the Fifth Amendment (Br. for App. at 1). The latter two strands of this argument may be quickly resolved. In *Whyte, supra,* this court rejected an all but identical

claim under the free exercise clause; *see also Smith,* 494 U.S. at 879, 110 S.Ct. 1595 (rejecting application of a "compelling governmental interest" test and holding that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" (citations and internal quotation marks omitted)). In light of these authorities, we reject it here as well. Nor is there merit to appellant's claim that his status as an alien—and consequent "[in]ability to participate in [the nation's] political process" (Br. for App. at 13)—entitles him to strict scrutiny of the District's marijuana laws under either the First or Fifth Amendments. He relies on *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), but there the Court, in invalidating state welfare laws that conditioned benefits on citizenship and fulfillment of residency requirements, held that "*classifications* based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." *Id.* at 372, 91 S.Ct. 1848 (emphasis added; internal citations omitted); *see also Miller v. Johnson,* 515 U.S. 900, 913, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (statutes are subject to strict scrutiny "when they contain express racial classifications ... [or] though race-neutral on their face, ... are motivated by a racial purpose or object"). Appellant has not even alleged that the District of Columbia's drug statute is facially discriminatory as to alienage or that the legislature intended to discriminate against aliens.

That leaves us with appellant's primary claim—that the judge erred in barring his defense under the RFRA. This statute was originally enacted in 1993 in direct response to the Supreme Court's

decision in *Smith, supra.* It purported "to restore the compelling interest test as set forth in [pre-*Smith* Supreme Court decisions by] provid[ing] a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb (b) (2005).[1] In *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court struck down the RFRA as applied to the states, holding that the scope of the Act exceeded Congress' enforcement powers under section five of the Fourteenth Amendment. However, subsequent congressional amendments to the Act and the consensus of federal court decisions since *Boerne* confirm that the RFRA remains applicable to the federal government, the District of Columbia, and non-state federal territories and possessions. *See* Pub.L. No. 106–274, § 7(a), 114 Stat. 806 (2000) (codified as amended at 42 U.S.C. § 2000bb–2 (2005)); *Madison v. Riter,* 355 F.3d 310, 315 (4th Cir.2003) ("RFRA continue[s] to apply to the federal government"); *O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 401 (7th Cir.2003) ("Every appellate court that has squarely addressed the question has held that the RFRA governs the activities of federal officers and agencies."); *Caldwell v. Caesar,* 150 F.Supp.2d 50, 56 (D.D.C.2001) ("[T]he Court will assume that the RFRA is constitutional as applied to actions of the District of Columbia."); *People of Guam v. Guerrero,* 290 F.3d 1210, 1222 n. 19 (9th Cir.2002) ("Congress amended RFRA by substituting the phrase 'covered entity' for 'State' to clarify its intent that RFRA remain in force as to federal instrumentalities."). The government does not dispute that the statute applies to a prosecution in the District of Columbia.

An individual asserting a claim or defense under the RFRA must show by a preponderance of the evidence that the government action in question would substantially burden the sincere exercise of his religion, whereupon the burden of proof shifts to the government to show that the action (1) would further a compelling governmental interest (2) that cannot be effectuated by less restrictive means. *See* 42 U.S.C. § 2000bb–1; *United States v. Israel,* 317 F.3d 768, 771 (7th Cir.2003). Appellant argues that the trial judge improperly rejected his RFRA defense without applying these standards. The government responds that appellant never adequately presented the statutory claim to the trial judge, and that this court, therefore, may review it only for plain error. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We agree with the government's position.

As the proceedings summarized above demonstrate, appellant never once mentioned the RFRA to the trial judge. It is true that he cited the *Bauer* decision and that *Bauer* in fact was a case interpreting and applying the RFRA. But appellant cited the case for the first time during an opening statement in which he claimed that his use of marijuana was essential "to the free exercise [of] his religion," an "absolute right [of his] under the First Amendment." When the judge asked him for case law from this jurisdiction or the Supreme Court supporting the religious defense, he again asserted "the First Amendment." As the trial progressed, the judge twice informed him of binding decisional law rejecting his constitutional free exercise claim. On neither occasion did appellant attempt to clarify that instead he was making a statutory argument; rather,

---

1. In reimposing the compelling governmental interest test, Congress criticized the Court in *Smith* for having "virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion." *Id.* § 2000bb (a)(4).

he tried merely to fold due process and equal protection elements into his claim (*i.e.,* Jamaican Rastafarians were an "insular minority" excluded from the political process), thus confirming that the defense he asserted was a constitutional one.

■ "Points not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal," *Baxter v. United States,* 640 A.2d 714, 717 (D.C.1994) (internal quotation marks omitted), a rule this court has regularly applied. *See also, e.g., Ebron v. United States,* 838 A.2d 1140, 1147 (D.C.2003); *Perkins v. United States,* 760 A.2d 604, 609 (D.C.2000). Appellant's bare citation to a decision (*Bauer*) involving an RFRA defense, while he asserted explicitly only a claim grounded in the First Amendment and never attempted to tell the judge the difference, did not raise the statutory claim with the distinctness necessary to preserve it. Moreover, given the peculiar relationship of the RFRA to First Amendment jurisprudence, appellant's obligation to make clear his reliance on it as a separate claim was especially strong. As pointed out, the express purpose of the Act is "to restore the compelling interest test" and "guarantee its application in all cases where free exercise of religion is substantially burdened," 42 U.S.C. § 2000bb (b)(1). Despite this endorsement of First

Amendment principles, the court of appeals in *Bauer* was satisfied that the RFRA "does not present itself as an interpretation of the Constitution overruling *Smith;* rather it consists of a command that must be followed as a matter of federal law." 84 F.3d at 1558. But later in *City of Boerne, supra,* the Supreme Court arguably viewed the matter differently. The RFRA, it stated, "appears ... to attempt a substantive change in constitutional protections," 521 U.S. at 532, 117 S.Ct. 2157; it "[attempts a] substantive alteration of [the Court's] holding" in *Smith. Id.* at 534, 117 S.Ct. 2157. A trial judge reading the lower court's decision in *Bauer* in light of *City of Boerne* could scarcely be faulted for mistaking a "free exercise" defense under the RFRA for the constitutional claim rejected by the Supreme Court in *Smith* and this court in *Whyte.*[2] If appellant intended to argue the statute as a separate and distinct defense, he was obligated to do so unambiguously. He did not even come close.

■ We accordingly review the statutory claim under plain error standards, and upon doing so, we find no basis for reversal. We assume, for argument' sake, that appellant held a sincere belief in religious tenets of Rastafarianism, and that enforcement of the marijuana law would substantially burden his exercise of that religion.[3]

**2.** Some courts and commentators have opined that the RFRA encroaches upon judicial authority and thus violates separation of powers principles. *See, e.g., La Voz Radio de la Communidad v. FCC,* 223 F.3d 313, 319 (6th Cir.2000) ("doubt[ing]" constitutionality of statute as applied to federal law); L. Eisgruber and L.G. Sager, *Why The Religious Freedom Restoration Act Is Unconstitutional,* 69 NYU L. REV. 437, 470 (1994) ("By demanding that the Court use constitutional concepts [such as compelling state interest] according to statutory instruction, Congress interferes with the judiciary's authority and obligation to develop an autonomous jurispru-

dence."). This case, of course, does not require us to venture an opinion on that issue.

**3.** These assumptions enable us to avoid, with or without a remand to the trial court, answering such problematical questions as whether Rastafarianism is a religion and, if so, whether its religious tenets in fact embrace the use of marijuana, as appellant contends, and would be substantially burdened by enforcement of the marijuana law as to him. *See, e.g., United States v. Meyers,* 95 F.3d 1475, 1483–85 (10th Cir.1996) (adopting a multi-factor test for deciding, under the Act, whether a claimed religion is in fact a religion rather than "a philosophy or way of life"). *But see Larson v. Valente,* 456 U.S. 228, 255,

On the other hand, it is not open to discussion, certainly *for a division of this court* after *Whyte*, that enforcement of the laws governing marijuana possession serves a compelling governmental interest. *See* 471 A.2d at 1021 (concluding that "the governmental interest [in the enforcement of the drug laws] is compelling and paramount to appellant's interest" in the religious use of marijuana"). *See also Olsen v. Drug Enforcement Admin.*, 279 U.S.App. D.C. 1, 13, 878 F.2d 1458, 1462 (1989) ("[E]very federal court that has considered the matter, so far as we are aware, has accepted the congressional determination that marijuana in fact poses a real threat to individual health and social welfare") (internal quotation marks and citations omitted); *Israel*, 317 F.3d at 771; *State v. Balzer*, 91 Wash.App. 44, 954 P.2d 931, 940 (1998). Appellant does not dispute this point as a general matter. His argument rather is that to exempt possession and use of marijuana by small religious groups such as the Rastafarians from the criminal prohibition would not threaten that compelling interest. In other words, he argues that across-the-board enforcement of the marijuana law is not the least restrictive means by which the government can effectuate its legitimate interest.

For this argument to prevail now, its correctness had to be "obvious" to the trial judge. *See Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (explaining threshold requirement of plain error analysis that unpreserved legal point must have been clear or obvious). Quite the contrary, this court's decision in *Whyte*, while it did not apply a least restrictive means test to the claim of religious exemption, is all but irreconcilable with the argument that the government's compelling interest in interdicting drugs can leave room for religious use of marijuana. And other courts, before and after the RFRA was enacted, have explicitly rejected the claim that a religious exemption is a viable less-restrictive means of enforcing the marijuana prohibition. *See United States v. Middleton*, 690 F.2d 820, 825 (11th Cir.1982) ("It would be difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to possess.") (internal quotation marks and citations omitted); *Israel*, 317 F.3d at 772 (noting that creating a religious-use exception would "open the door to a weed-like proliferation of claims for religious exemptions"); *Balzer*, 954 P.2d at 940 ("[I]f the criminal statutes against marihuana were nullified as to those who claim the right to possess and traffic in this drug for religious purposes [. . . f]or all practical purposes the anti-marihuana laws would be meaningless, and enforcement impossible."). The fact that appellant can cite scarce decisional authority favoring relaxed enforcement in order to accommodate religious use,[4] falls well short of meeting his burden under the plain error standard.

*Affirmed.*

---

102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), observing that "state inspection and evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids" (*internal quotation omitted*).

**4.** *See, e.g., United States v. Valrey*, 2000 WL 692647, *3, 2000 U.S. Dist. LEXIS 22390, *8 (W.D.Wash.2000) (unpublished).