**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

CHARLES WADE LAFLEY, a/k/a
Wade Lafley,
              *Defendant-Appellant.*

No. 10-30132

D.C. No.
6:00-cr-00019-
DWM-2

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
March 9, 2011—Portland, Oregon

Filed September 1, 2011

Before: Dorothy W. Nelson, Sidney R. Thomas, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Thomas

16749

**COUNSEL**

John Rhodes, Assistant Federal Defender, and Briana Sch-
wandt, Legal Intern, Federal Defenders of Montana, Mis-
soula, Montana, for the defendant-appellant.

Leif Johnson and Timothy J. Racicot, Assistant U.S. Attor-
neys, and C. Casey Forbes, Law Intern. Missoula, Montana,
for the plaintiff-appellee.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question whether a convicted methamphetamine dealer is entitled, under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, to use marijuana during his period of supervised release. In the circumstances presented by this case, the district court declined to suspend the mandatory supervised release condition prohibiting such use. We affirm.

I

Lafley pleaded guilty to conspiracy to manufacture and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 846. He was sentenced to 110 months of imprisonment to be followed by 60 months of supervised release. The court imposed conditions of supervised release prohibiting Lafley from committing "another federal, state, or local crime," from "possess[ing] a controlled substance without a valid prescription," and from "consuming, possessing or ingesting alcoholic beverages." Lafley served his term of imprisonment and began serving his term of supervised release.

While on supervised release, Lafley tested positive for marijuana. According to his probation officer's report, when he was confronted with the positive test he "readily admitted his use and advised he had been feeling very stressed, nearly suicidal, and thought about returning to prison." Lafley rejected inpatient treatment through the Veterans Administration, but he did adjust his prescription medication and continued outpatient treatment. Accordingly, and because Lafley tested negative for marijuana, the probation officer's subsequent report recommended that the court take no further action. The court accepted the officer's recommendation.

Subsequently, the probation officer filed a petition for a warrant for Lafley's arrest. The petition alleged two violations of the terms of Lafley's supervised release: that he consumed alcohol and that he refused to participate in substance abuse testing. The court issued an arrest warrant. An amended petition additionally alleged that when the warrant was executed, Lafley was driving on a suspended license and possessed marijuana. Lafley pleaded guilty to violations of state law and was sentenced to ten days in jail and a $530 fine.

At his revocation hearing, Lafley admitted the allegations in the amended petition. Relying on his admissions, the court found him in violation of the conditions of supervised release. However, Lafley and witnesses who spoke on his behalf argued that he was a changed man.[1] The court offered Lafley "one more chance" and delayed the imposition of sentence for four months.[2]

At the subsequent disposition hearing, Lafley and his lawyer testified that, over the prior four months, Lafley had procured a driver's license and auto insurance, bought a car, found a place to live, and attended treatment. Lafley's lawyer stated that Lafley was no longer "drinking alcohol, he's not getting into fights, he's not making drugs, he's not dealing drugs, he's not robbing places. He's working hard to be a respectful citizen as well as a respected citizen." Lafley's lawyer concluded: "And he's worked hard to comply with the conditions of his release, although there is this marijuana issue."

Apparently, Lafley had joined the Montana Cannabis Ministries and procured a medical marijuana card.[3] Lafley admit-

---

[1]At the hearing, neither Lafley nor any witnesses referenced Lafley's using marijuana for religious purposes. In fact, Lafley represented that he no longer used the drug.

[2]The court made only slight amendments to the conditions of release—specifically, authorizing daily breathalyzer and/or urinalysis tests.

[3]As of this writing, the use of medical marijuana is legal under Montana law, *see* Mont. Code Ann. § 50-46-101 *et seq.*, but illegal under federal

ted to using marijuana once, a month before his hearing, stating that he was "spiritually moved at the time to do so." On the basis of his beliefs as a member of the Ministries, he argued that his free exercise rights under the First Amendment entitled him to a religious exemption to Standard Condition Number 7 that would allow his continued use of marijuana for religious purposes.[4]

Lafley called two witnesses to testify as to his religious beliefs. Randy Leibenguth, a leader of the Montana Cannabis Ministries, is "a Cannabis Sacrament Minister, a dispensary owner, and a D.J., who has lived between the cities of Bozeman and Belgrade, Montana[,] for the past seven years."[5] Lucas Mulvaugh "is a minister at the Montana Cannabis Ministries and acts as the spiritual advisor." In his allocution, Lafley testified to his rehabilitation, aided by his association with the Ministries, and his desire to continue that association— and to continue partaking in its "religious sacrament," marijuana.[6]

---

law, *see* 21 U.S.C. § 812(c), Schedule I(c)(10); *see also State v. Nelson*, 195 P.3d 826, 834 (Mont. 2008). Because Lafley represents that he never used his medical marijuana card, and because he does not challenge the conditions of his supervised release as they relate to medical marijuana, that question is not relevant to our consideration.

[4]Standard Condition Number 7, or "the Condition," reads:

> [T]he defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substances, except as prescribed by a physician[.]

[5]Leibenguth testified that the Montana Cannabis Ministries "is a brother branch of Hawaiian Cannabis Ministry, located in Hilo, Hawaii, which has been in operation for over nine years and is led by Roger Christie. . . . [Christie] provided training to . . . Leibenguth through phone and e-mail conversations over the past two years." At oral argument, counsel for Lafley conceded that Christie and thirteen others were indicted on federal drug charges in June 2010.

[6]Leibenguth consistently defined the Montana Cannabis Ministries' beliefs in terms of its "religious sacrament," marijuana. He testified that

At the conclusion of the hearing, the district court sentenced Lafley to three months of incarceration followed by 57 months of supervised release. The court expressed doubt as to whether the Ministries is a religion, stating, "with . . . all due respect . . . it doesn't sound like a religion to me, it sounds like a way to smoke marijuana," The court rejected Lafley's First Amendment challenge. Although Lafley had not specifically asserted a claim under RFRA, the district court rejected the applicability of the Act, citing *United States v. Israel*, 317 F.3d 768 (7th Cir. 2003). In *Israel*, the Seventh Circuit rejected a Rastafarian's claim that he did not violate a condition of his supervised release because his sacramental use of marijuana was protected by RFRA.

When the court inquired of counsel whether Lafley had any final objections to his sentence, Lafley's lawyer responded: "Not beyond the religious freedom argument the [c]ourt has addressed." Over that objection, the court imposed conditions of supervised release that prohibit Lafley from "commit[ting] any federal, state or local crime" and from "possess[ing] any controlled substance." The court specified that Lafley could not "use . . . medical marijuana" or use marijuana as a member of the Ministries. The court's written judgment included Standard Condition Number 7, providing that during the term of Lafley's supervised release he "shall not unlawfully possess a controlled substance" and "shall not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician."

_____

the Ministries' key "belief is that Cannabis brings us closer to God, it provides us with a spiritual unity, spiritual unifier." He further testified that the Ministries' key religious practice is "baptism by fire," which entails "lighting a lighter or any sort of match or anything else on the religious sacrament, inhaling that and exhaling." He stated on two occasions that the Montana Cannabis Ministries' "religion" is about "the sacrament of Cannabis" although he stated on three occasions that the Ministries is not, in fact, a religion. As discussed, we need not decide whether the Ministries qualifies as a religion for purposes of RFRA.

The district court later issued a written order explaining its reasoning for denying Lafley's objection to the Condition. The court focused on Lafley's First Amendment claim but also held that, even if Lafley had raised a RFRA claim—and, further, even if he qualified for the Act's protections because the Condition would substantially burden his sincere religious belief—"the Act would not provide the relief he seeks . . . because [the Condition] serves 'a compelling government interest in the least restrictive manner possible'" (quoting *Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002)). Lafley timely appealed.

## II

On appeal, Lafley does not challenge the Condition on First Amendment grounds. Rather, he argues that insofar as the Condition prohibits his religious use of marijuana during his term of supervised release, it violates RFRA.

**[1]** RFRA provides, in relevant part:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.[7] "A person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.' " *O Centro Espirita*, 546 U.S. at 424 (quoting 42 U.S.C. § 2000bb-1(c)).

Thus, RFRA requires a two-step analysis. A claimant under the Act must first establish a prima facie case by showing that the government action at issue "works a substantial burden on his ability to freely practice his religion." *Guerrero*, 290 F.3d at 1222; *see Navajo Nation*, 535 F.3d at 1068; *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007) (per curiam) (a claimant "may only invoke RFRA if his beliefs are both sincerely held and rooted in religious belief" (internal quotation marks omitted)). If a claimant establishes a substantial burden on his exercise of religion, the challenged government action may nonetheless be upheld if the government "demonstrates" that the action "is in furtherance of a compelling governmental interest" and is implemented by "the least restrictive means." 42 U.S.C. § 2000bb-1(b); *see also id.* § 2000bb-2(3) ("the term 'demonstrates' means meets the burdens of going forward with the evidence and of persuasion"); *Navajo Nation*, 535 F.3d at 1068.

The district court did not reach the question whether Lafley had established a prima facie case or whether Montana Cannabis Ministries constituted a religion entitled to protection under RFRA, reasoning that the government satisfied its bur-

---

[7]The history of RFRA's enactment as a response to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), and of the Supreme Court's subsequent decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), holding RFRA's application to the states to be beyond Congress' legislative authority under § 5 of the Fourteenth Amendment, is well-documented. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 & n. 1 (2006); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1067-69 (9th Cir. 2008) (en banc). RFRA "remains operative as to the federal government." *Id.* at 1067 n.10 (citing *Guerrero*, 290 F.3d at 1220-22).

den at the second step of the RFRA analysis. Therefore, we consider the arguments pertaining to that stage of analysis and decline to reach any other question.[8]

A

**[2]** The government has a compelling interest in denying a convicted drug felon a religious exemption that would permit him to use drugs while serving his term of supervised release.

**[3]** In fashioning the conditions of supervised release, Congress has instructed courts to consider the particular defendant's criminal history and characteristics, and to tailor the conditions to prevent recidivism and promote rehabilitation. 18 U.S.C. § 3583(c) (incorporating 18 U.S.C. § 3553(a)(1), (a)(2)(C), and (a)(2)(D) by reference). However, Congress has required courts to include two prohibitions as "explicit condition[s] of supervised release" for *all* defendants: "that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance." *Id.* § 3583(d). This requirement is consistent with the congressional finding in the Controlled Substances Act that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2). It also represents Congress' judgment about the importance of preventing drug abuse among those who have been convicted of crimes and sentenced to a term that includes a supervised release component.

---

[8]In doing so, we recognize that "the government is not required to prove a compelling interest for its action or that its action involves the least restrictive means to achieve its purpose, unless the plaintiff first proves the government action substantially burdens his exercise of religion." *Navajo Nation*, 535 F.3d at 1068-69.

**[4]** In this case, it is uncontested that Lafley is a convicted methamphetamine dealer who has violated his conditions of supervised release several times. The mandatory condition of supervised release is rationally related to his conviction, and the government has a compelling interest in prohibiting him from using controlled substances during his period of supervised release. The record establishes "that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro Espirita*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb-1(b)).

*O Centro Espirita* does not command a contrary result. There, the Supreme Court addressed whether, consistent with RFRA, the government could refuse a small religious sect an exemption to the Controlled Substances Act, 21 U.S.C. §§ 801-904, so that the sect could "receiv[e] communion by drinking a sacramental tea . . . that contains a hallucinogen regulated under" the Act as a Schedule I substance. 546 U.S. at 423.[9] Before the Court, the government's "central submission [was] that it ha[d] a compelling interest in the uniform application of the Controlled Substances Act, such that no exception to the ban on use of the hallucinogen can be made to accommodate the sect's sincere religious practice." *Id.*

The Court rejected the government's argument and held

---

[9]The hallucinogen at issue in *O Centro Espirita* is, like marijuana, listed in Schedule I of the Controlled Substances Act. 546 U.S. at 425; *see* 21 U.S.C. § 812(c), Schedule I(c). "Substances listed in Schedule I of the Act are subject to the most comprehensive restrictions, including an outright ban on all importation and use, except pursuant to strictly regulated research projects." *O Centro Espirita*, 546 U.S. at 425 (citing 21 U.S.C. §§ 823, 960(a)(1)). "The Act authorizes the imposition of a criminal sentence for simple possession of Schedule I substances and mandates the imposition of a criminal sentence for possession 'with intent to manufacture, distribute, or dispense' such substances . . . ." *Id.* (citations omitted); *see* 21 U.S.C. § 844(a); § 841(a), (b)).

that RFRA prohibited it from interfering with the sect's free exercise of religion. *Id.* The Court determined that "the Government's mere invocation of the general characteristics of Schedule I substances, as set forth in the Controlled Substances Act, cannot carry the day." *Id.* at 432. The Court acknowledged "that Schedule I substances . . . are exceptionally dangerous," but found "no indication that Congress, in classifying" the hallucinogen in the sect's tea, "considered the harms posed by the particular use at issue," namely, the "circumscribed, sacramental use of" the hallucinogenic tea by the sect. *Id.* (emphasis added). The Court concluded that "Congress' determination that [the hallucinogen] should be listed under Schedule I simply does not provide a categorical answer that relieves the Government of the obligation to shoulder its burden under RFRA." *Id.* The Court found significant support for rejecting the argument that the Controlled Substances Act "admits of no exceptions" in the fact that the Act explicitly *provides* for exceptions. *Id.* at 430. The Court described how "the Act itself contemplates . . . exempting certain people from its requirements," *id.* at 432-33 (citing 21 U.S.C. § 822(d)), and offered as a pertinent example the fact that "an exception has been made to the Schedule I ban for [the] religious use" of peyote by Indian Tribes, *id.* at 433 (citing 42 U.S.C. § 1996a(b)(1); 21 C.F.R. § 1307.31) (2005)).

**[5]** Here, by contrast, the government does not rely on its general interest in regulating controlled substances. Rather, it argues that it has a compelling interest in prohibiting Lafley, a convicted drug dealer, from using marijuana, and therefore in denying him a religious exemption to the standard conditions of supervised release. Furthermore, unlike the Controlled Substances Act, the statutory regime at issue allows no exceptions. Indeed, the law prohibits *all* defendants on supervised release from using controlled substances. 18 U.S.C. § 3583(d). When that prohibition is applied to someone with a criminal history like Lafley's, the government's interest is compelling.

B

Having determined that the government's interest in prohibiting a convicted drug felon from using drugs during his term of supervised release is compelling, we turn to the question whether Standard Condition Number 7 is the least restrictive means of furthering that interest.

**[6]** The standard condition is no broader than the interest the government has put forward. It simply states that Lafley "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." No less restrictive condition could feasibly and adequately prohibit Lafley from using marijuana.

Lafley argues instead for conditions prohibiting his use of drugs other than marijuana, prohibiting his recreational use of marijuana, requiring self-reporting of his alleged sacramental use of marijuana, and/or mandating urine testing for the use of other controlled substances, among others. All of these are as impractical as they are insufficient. A positive drug test does not indicate whether the use was recreational or sacramental, and restricting testing to other controlled substances would not accomplish the end of preventing Lafley from using illegal drugs during his supervised release. Requiring continuous monitoring of Lafley's marijuana use to determine whether the use was recreational or religious would place an unreasonable burden on a probation office.

**[7]** In sum, under the circumstances presented here, the condition is the least restrictive means of advancing the government's compelling interest.

III

Because the government's interest in prohibiting a convicted methamphetamine dealer from using controlled sub-

stances during supervised release is compelling, and because Standard Condition Number 7 is the least restrictive means of advancing that interest, the district court correctly imposed the condition. We need not determine, and do not reach, any other question presented, including opining under what different circumstances RFRA might require a different result.

**AFFIRMED.**