In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 25-2293

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN BROADFIELD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 13-cr-10055-1 — **Michael M. Mihm**, *Judge.*

_____

ARGUED MAY 21, 2026 — DECIDED JUNE 22, 2026

_____

Before KIRSCH, PRYOR, and MALDONADO, *Circuit Judges.*

PRYOR, *Circuit Judge.* After serving a prison term for conspiracy to manufacture methamphetamine, Brian Broadfield violated the terms of his supervised release in June 2024. For doing so, the district court adjudicated Broadfield guilty and imposed a term of 16 months' imprisonment and imposed six years of supervised release. *United States v. Broadfield*, No. 24-2075, 2025 WL 667522, at *2 (7th Cir. Mar. 3, 2025). A condition

of supervised release required Broadfield to "refrain from any use of alcohol."

About a month before completing his prison term, Broadfield moved to modify the conditions of his supervised release. Broadfield argued that he should be permitted to drink a glass of wine during a religious ceremony on his Sabbath, which is sundown Friday to sundown Saturday, in accordance with his religious beliefs as a Messianic Jew. In his view, the complete alcohol ban ran afoul of his rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and involved a greater deprivation of liberty than was reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a).

While this motion was pending, Broadfield began serving his term of supervised release. The district court eventually denied Broadfield's request for the modification, and Broadfield appeals. For the reasons articulated below, we affirm.

## I.   BACKGROUND

### A.  Factual and Procedural History

In 2013, Broadfield was indicted with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Broadfield pled guilty pursuant to a plea agreement to conspiracy to manufacture methamphetamine in 2014. Prior to sentencing, Broadfield moved for an independent psychological evaluation, which the district court granted.

The report concluded with reasonable medical certainty that Broadfield suffered from various psychiatric disorders, including alcohol use disorder and several substance abuse disorders. As stated in the report, Broadfield reported losing

control of his use of alcohol and that his binging of alcohol contributed to his criminal convictions and social isolation. The report also provided treatment recommendations, including that Broadfield would benefit from medication, psychotherapy, and "rehabilitation efforts to maintain abstinence from drugs and alcohol." Indeed, the report noted, "[a]bstinence should be the goal."

Prior to sentencing, the United States Probation Office submitted its Presentence Investigation Report ("PSR"). The PSR detailed that during Broadfield's late teens and in his twenties, he received two convictions under state law for driving under the influence and one conviction for burglary where he revealed he was intoxicated during the offense.[1] It also described that Broadfield's abuse of drugs and alcohol thwarted successful completion of his terms of probation for his various state convictions. And by his early thirties, the PSR reported that Broadfield had accumulated numerous convictions regarding the possessing and manufacturing of methamphetamine.

In March 2016, the district court sentenced Broadfield to a below-Guidelines sentence of 208 months' imprisonment to be followed by eight years of supervised release. A condition of his supervised release was that he refrain from the use of alcohol, and Broadfield did not object. Following a motion

---

[1] Prior to his federal indictment for the instant offense, Broadfield had also been separately convicted of burglary, forgery, unlawful use of a credit card, attempted theft, criminal damage to property, obstructing justice three times, attempted obstruction of justice, resisting a peace officer, and possession of cannabis.

from the government, the district court later reduced Broadfield's prison sentence to 156 months and entered an amended judgment on May 5, 2017.

### B. Supervised Release Violations

Broadfield began his term of supervised release on November 17, 2023. A few days later, on November 27, 2023, Broadfield submitted to drug and alcohol testing, which returned positive for alcohol metabolite. In December, Broadfield admitted to his probation officer that he had consumed alcohol and was verbally admonished. And, in March 2024, Broadfield failed to submit to a random drug test and admitted to a supervisory probation officer that he had begun using marijuana. He was again admonished by probation on March 20, 2024.

Then, about a week later, frustrated with his girlfriend, Broadfield started drinking alcohol. He continued until he had drunk an entire bottle of liquor and "blacked out." He had a physical and verbal altercation with his girlfriend to which police responded. The police ultimately arrested Broadfield. While in the police car, he slipped his handcuffs to the front of his body, attempted to rip the car's camera down, and tried to damage the car's window and divider with his foot. The police deployed pepper spray to stop Broadfield's behavior. While in the holding shower cell at the jail that same day, he began flooding the cell. He was removed and escorted to a different cell. Once there, he hit and kicked the cell door, urinated on the floor, and shoved feces under the door. He ultimately fell asleep, woke up, and apologized to jail staff.

Based on these events, Broadfield was charged in state court with domestic battery and resisting arrest. And, on April 1, 2024, the United States Probation Office for the Central District of Illinois filed a petition to revoke Broadfield's supervised release. The petition alleged Broadfield committed domestic battery, resisting arrest, and two charges of criminal damage to government property in violation of a condition of his supervised release prohibiting him from committing another crime. The petition also alleged Broadfield violated other terms and conditions, including a condition prohibiting his possession or use of alcohol and a condition requiring him to report a change of address. A warrant was issued in connection with the revocation petition, and Broadfield was arrested on April 8, 2024.

A magistrate judge held a detention hearing on April 10, 2024, and ordered Broadfield detained pending resolution of the probation office's petition to revoke his supervised release.

### C. Revocation of Supervised Release

At the revocation hearing in June 2024, Broadfield admitted the violations of supervised release, including resisting arrest, two counts of criminal damage to property, failure to comply with mental health treatment, possessing and consuming alcohol, and failure to report a change in address. *Broadfield*, 2025 WL 667522, at *1. The government withdrew its allegation that Broadfield's conduct constituted domestic battery.

During the hearing, defense counsel explained to the district court that Broadfield "has this generalized anxiety disorder … . And if he gets into a real stressful situation, his mind

gets racing. It gets the better of him. He makes poor decisions. One of the poor decisions he makes is to turn to alcohol to try and slow that down." When Broadfield's anxiety increases, defense counsel stated, "[Broadfield] drinks. And he doesn't just drink alone [sic]. He drinks the entire bottle. And … that's why he's here." Defense counsel continued by noting that Broadfield's "mental illness" coupled with his alcohol use was an "unfortunate[] … fact of his life that he need[ed] to address." Indeed, defense counsel emphasized that Broadfield had a dual diagnosis of mental illness and substance abuse, requiring integrated treatment that intertwined. Thus, he concluded, Broadfield "can't use alcohol because … once he starts, he can't stop."

The district court echoed that sentiment prior to announcing its decision to impose a term of reimprisonment for Broadfield. Specifically, it emphasized that Broadfield suffered from "mental health problems" that he refused to acknowledge as well as his need for mental health treatment. The district court also adopted the factual findings outlined in the probation office's supplemental violation report, which highlighted Broadfield's history of alcohol abuse, mental health issues, crimes involving alcohol, and illegal drug use. Moreover, the district court adopted the applicable sentencing guidelines range calculation that the document laid out of 21 months to 27 months' imprisonment for Broadfield's offense.

For violating his supervised release, the court sentenced Broadfield to a below-Guidelines' sentence of 16 months' imprisonment to be followed by six years of supervised release. The court imposed as a condition of supervised release that Broadfield "refrain from any use of alcohol" and "participate

in a program for alcohol treatment," "including testing, to determine if [he had] used alcohol." Broadfield did not object to this condition.

### D. Motion to Modify Conditions of Supervised Release

About a month before being released from prison, in April 2025, Broadfield moved to modify his conditions of supervised release.

Broadfield asserted the complete alcohol ban burdened his right as a practicing Messianic Jew to exercise his faith of consuming alcohol during religious ceremonies on his Sabbath.[2] Thus, in his view, the alcohol prohibition condition substantially burdened his exercise of religion in violation of RFRA and involved a greater deprivation of liberty than reasonably necessary to accomplish the goals of § 3553(a). Broadfield conceded that the government had a compelling interest in his compliance with the conditions of his supervision and the ban on alcohol furthered that interest. But he maintained the complete alcohol ban, with no exception for religious observance, was not the least restrictive means of furthering the government's interest.

The government opposed the motion, arguing the complete ban was the least restrictive means to further its interest of protecting the public and involved no greater deprivation

---

[2] Broadfield also moved to modify a condition of his supervised release that he "take any and all prescribed medications recommended by" mental health treatment providers. The district court modified that condition to require Broadfield to take any prescribed medication unless he notified the court that he did not want to take it, at which point the court would hold a hearing. Broadfield raises no issue on appeal regarding the district court's decision on that front, so we discuss it no further.

of liberty than was necessary for the purposes laid out in 18 U.S.C. § 3553(a).

The district court held a hearing on Broadfield's motion. At the hearing, Broadfield narrowed his request and emphasized that he was seeking only to be allowed to drink "a normal wineglass amount of wine" during a religious ceremony that occurred on his Sabbath. Put another way, Broadfield was seeking to modify the condition of his supervised release to provide that he be banned from consuming alcohol save for one glass of wine during a religious ceremony on his Sabbath.

The government explained, however, that permitting alcohol use even during his Sabbath would thwart probation's effective monitoring of Broadfield's overall compliance with the condition because the urinalysis test probation used only tested for the presence of alcohol metabolite. That meant the test could only return a positive result (alcohol was present) or a negative result (alcohol was absent). Though the government suggested it might agree to Broadfield's request if probation could successfully monitor the single glass of wine "was the only alcohol that was being consumed," the government contended that it would not be possible and "any exception would greatly decrease[] probation's effectiveness" in ensuring compliance "with this condition that he not drink alcohol." The government also insisted Broadfield's abstention from drinking alcohol was necessary to further its compelling interest in public safety.

In response, defense counsel argued probation could use a breathalyzer to monitor Broadfield's compliance with the condition and the requested exception—even though he recognized that he did not know if they would be sensitive enough "for evidentiary purposes." In his view, though, that

option provided a more tailored solution to advance the government's compelling interest and minimize the burden on Broadfield's religious rights.

The district court denied Broadfield's motion. The district court explained that Broadfield "is dangerous when he drinks," "doesn't deal with stress well," and had "serious," drinking habits. Because of that, the district court found the government demonstrated a compelling interest in keeping Broadfield alcohol free. Given Broadfield's history, the district court found drinking a single glass of alcohol could cause Broadfield to "go off the deep end."

The district court then queried whether it could "somehow protect against that" for Broadfield. Analyzing the parties' arguments, the sentencing judge did not see how it could enforce a condition that banned Broadfield from drinking alcohol except for a single glass of wine that could be consumed only during a religious ceremony on his Sabbath. The use of a breathalyzer was not a solution because it was unworkable in the district court's view. Probation was "not going to … follow him around until" his religious ceremony or be unreasonably forced to "[make] arrangements to go to his religious ceremony with him and test him right after it's over." Even more to the point, however, "the only way to reasonably impose [the] condition," the district court continued, "is to say that he cannot drink alcohol, period." Given Broadfield's "proven history with alcohol, the danger it represents, not only to him but to everybody else around him," the district could not identify any lesser restrictive means to serve that compelling interest "other than [to] say you can't do this." Accordingly, the district court denied Broadfield's request to modify this condition of his supervised release.

Broadfield now appeals.[3]

## II.    ANALYSIS

On appeal, Broadfield lodges two challenges to the denial of his motion to modify his supervised release conditions. First, he argues the complete alcohol ban violates RFRA because it is not the least restrictive means to advance the government's compelling interest. Second, Broadfield presses that the complete alcohol ban is a greater deprivation of liberty than is reasonably necessary to achieve the goals outlined in § 3553(a).

Before moving to the analysis, we provide some procedural context. When imposing a term of supervised release, a district court must include certain mandatory conditions, such as forbidding the defendant from committing another crime. 18 U.S.C. § 3583(d); *see also Esteras v. United States*, 606 U.S. 185, 188 (2025) ("Supervised release comes with conditions—for instance, the defendant must refrain from committing another crime." (citing 18 U.S.C. § 3583(d)). The court may also impose others within its discretion. *Esteras*, 606 U.S. at 192; 18 U.S.C. § 3583(d). A discretionary condition of supervised release may include prohibiting a defendant from consuming alcohol. *See, e.g.*, *United States v. Schave*, 186 F.3d 839, 842 (7th Cir. 1999) (collecting cases). When a court decides

---

[3] While certain of our sister circuits have held that district courts lack jurisdiction over a defendant's challenge to the legality of a condition of supervision via a motion to modify the conditions of supervised release under 18 U.S.C. § 3583, *see, e.g.*, *United States v. Faber*, 950 F.3d 356, 359 (6th Cir. 2020) (collecting cases), we have long held the opposite, *United States v. Neal*, 810 F.3d 512, 518 (7th Cir. 2016). That is, "§ 3583(e)(2) … allow[s] a defendant to bring substantive challenges to the current legality of conditions of supervised release." *Id.* With that, our jurisdiction is secure. *Id.*

both to include a term of supervised release and the conditions of such a term, it must consider the factors set forth in a variety of statutory provisions. *Esteras*, 606 U.S. at 192; 18 U.S.C. § 3583(d)(1)–(3).

A defendant can move to modify his conditions of supervised release, and the district court "must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present information in mitigation." FED. R. CRIM. P. 32.1(c). "Any modification, like the original conditions, must (1) be 'reasonably related to the factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) [be] consistent with the policy statements issued by the Sentencing Commission.'" *United States v. Evans*, 727 F.3d 730, 733 (7th Cir. 2013) (quoting *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007)).

In addition to the nature and circumstances of the offense and the history and characteristics of the defendant, any modification must also be reasonably related to affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *United States v. Martin*, 109 F.4th 985, 989–90 (7th Cir. 2024); 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D)). The district court in making its modification decision must also consider the kinds of sentences available, pertinent policy statements issued by the United States Sentencing Commission, the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(4)–(7)).

With respect to our standard of review, we examine a district court's denial of a motion to modify conditions of supervised release for an abuse of discretion. *United States v. Baker*, 755 F.3d 515, 523 (7th Cir. 2014); *Evans*, 727 F.3d at 732. But when evaluating the legality of a condition of supervised release turns on an "an analysis of constitutional issues," our review is de novo. *United States v. Israel*, 317 F.3d 768, 770 (7th Cir. 2003); *see also United States v. Shannon*, 851 F.3d 740, 743 (7th Cir. 2017).

## A. Application of the Religious Freedom Restoration Act

We turn now to Broadfield's first argument. He contends, as a practicing Messianic Jew, the district court's supervised release condition prohibiting him from the use of alcohol violates his free exercise of religion, in violation of RFRA.

Under RFRA, the federal government is prohibited "from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690–91 (2014); 42 U.S.C. § 2000bb–2000bb-4. Put another way, "[o]nce a RFRA claimant makes a prima facie case that the application of a law or regulation substantially burdens his religious practice, the burden shifts to the government to justify the burden under strict scrutiny." *Korte v. Sebelius*, 735 F.3d 654, 673 (7th Cir. 2013).

The parties here do not dispute that Broadfield holds a sincerely held religious belief that the complete alcohol ban condition of supervised release substantially burdens. So the only question in this appeal is whether the government has demonstrated that this condition furthers a compelling governmental interest and the total ban is the least restrictive means of furthering that interest. *Hobby Lobby*, 573 U.S. at 694–95. Broadfield argues that to conform with RFRA's religious liberty protections, however, this condition must be modified to allow him, a Messianic Jew, to drink one glass of wine during a religious ceremony between sundown on Friday and sundown on Saturday in accordance with his sincerely held religious belief.

### 1. Compelling Interest

"[U]nder RFRA … the government must establish a compelling and specific justification for burdening [the objecting party]." *Korte*, 735 F.3d at 685. That is, "RFRA requires the [g]overnment to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006). To frame the compelling interest properly, we must ask whether the government's particular interest in burdening Broadfield's right, as a practicing Messianic Jew to drink a glass of wine during a religious ceremony on his Sabbath, is justified in light of the record. *West v. Radtke*, 48 F.4th 836, 848 (7th Cir. 2022).

Here, Broadfield concedes that the government has a compelling interest in preventing him from using alcohol outside his religious services. But the government goes further,

contending that it has a compelling interest in prohibiting Broadfield from consuming alcohol *entirely*. We agree.

First, the Supreme Court has made clear that the government has a compelling interest in protecting the community from the criminal acts of another. *Schall v. Martin*, 467 U.S. 253, 264 (1984) (recognizing that the government has a "'legitimate and compelling interest' in protecting the community from crime" (quoting *De Veau v. Braisted*, 363 U.S. 144, 155 (1960))). Second, the government has a compelling interest in curbing an individual's recidivism, promoting his rehabilitation, and preventing drug abuse. *Israel*, 317 F.3d at 771; *United States v. Widmer*, 785 F.3d 200, 204 (6th Cir. 2015); *see also Kaemmerling v. Lappin*, 553 F.3d 669 (D.C. Cir. 2008).

These compelling interests apply in full force to Broadfield. Broadfield has a sustained record of alcohol abuse closely linked to his commission of crimes and other violent behavior. He has been arrested twice for driving under the influence, committing burglary while intoxicated, and violating the terms and conditions of his supervised release sparked by his binge drinking. His most recent violations, which led to the June 2024 revocation and prison term, were initiated by his consumption of a bottle of moonshine in one sitting and "blacking out." Broadfield himself has acknowledged that imbibing alcohol has prompted criminal activity, hindered his successful completion of supervision, and led to other regretful behavior. Given all of this, we agree with the district court that the government has a compelling interest in keeping Broadfield alcohol free.

### 2. *Narrow Tailoring*

For its part, the "least restrictive means" prong is "exceptionally demanding" and requires the government to "show that 'it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *West v. Hoy*, 126 F.4th 567, 573 (7th Cir. 2025) (alteration in original) (quoting *Hobby Lobby*, 573 U.S. at 728); *see also Korte*, 735 F.3d at 686 (evaluating RFRA claims "requires a substantial congruity—a close 'fit'—between the governmental interest and the means chosen to further that interest"). When faced with a "viable alternative," the government must show why, with evidence, it will not achieve its desired goal. *Hobby Lobby*, 573 U.S. at 728–29; *Holt v. Hobbs*, 574 U.S. 352, 369 (2015) (noting that courts cannot "assume a plausible, less restrictive alternative would be ineffective" (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 824 (2000))); *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003) ("A governmental body that imposes a 'substantial' burden on a religious practice must *demonstrate*, and not just assert, that the rule at issue is the least restrictive means of achieving a compelling governmental interest." (emphasis in original)). And like the compelling interest prong, RFRA "requir[es] the [g]overnment to demonstrate that application of a substantial burden to *the person* … is the least restrictive means of furthering [that] compelling governmental interest." *Hobby Lobby*, 573 U.S. at 728 (emphasis in original) (quoting 42 U.S.C. § 2000bb-1(b)).

On this front, the parties' arguments flow from their respective framing of the government's compelling interest in this case. Broadfield insists that there is a least restrictive means to advance the government's compelling interest in

keeping him alcohol free but for a single glass of wine im-
bibed during a religious ceremony on his Sabbath. In his view,
a probation officer could use a breathalyzer to monitor his
drinking as opposed to the urinalysis test, which only tests for
the presence or absence of alcohol metabolite. The govern-
ment disagrees. In its view, the only way to advance its com-
pelling interest in preventing Broadfield from committing
crimes while intoxicated, to promote his rehabilitation, to re-
duce his recidivism, and to curb his alcohol addiction is to for-
bid him from drinking alcohol without any exceptions. And
even if we accepted Broadfield's framing of the compelling
interest here, the government maintains that forcing a proba-
tion officer to follow Broadfield around with a breathalyzer is
impracticable and would impose significant administrative
burdens on the probation office.

Looking at Broadfield's history and characteristics, we
agree with the district court that a complete alcohol ban is the
least restrictive means to advance the government's compel-
ling interest. *See, e.g.*, *United States v. Anderson*, 854 F.3d 1033,
1037 (8th Cir. 2017) ("[W]e see no way for the [g]overnment
to accommodate [the defendant] while still furthering its in-
terests."); *United States v. Christie*, 825 F.3d 1048, 1063 (9th Cir.
2016) ("[I]n this case, in light of these defendants and the facts
in this record, we are convinced that the government could
not achieve its compelling interest … through anything less
than mandating the [defendants'] full compliance with the
[applicable law]."). The record here is replete with evidence
supporting this conclusion. Multiple medical professionals
have diagnosed Broadfield with alcohol addiction or depend-
ence and advocated that he abstain from alcohol. Broadfield
himself has admitted to losing control of his use of alcohol,
typically being intoxicated when he engages in criminal

behavior, and drinking too much too fast. Broadfield's lawyer at his revocation hearing argued Broadfield should not be permitted to drink because once Broadfield starts, he cannot stop.

Against this evidentiary backdrop, Broadfield contends nothing in the record shows he is dangerous when he drinks a single glass of wine as opposed to when he drinks in excess. This record, which provides evidence spanning most of Broadfield's life, shows the opposite. Indeed, the events underlying the revocation of his supervised release illustrate why a complete alcohol ban is narrowly tailored. Broadfield's first sip of liquor snowballed into him consuming a whole bottle of liquor, spurring charges of resisting arrest and criminal destruction of government property. Nothing less than a complete ban advances the government's compelling and particularized interest in preventing Broadfield from slipping down this slope again.

At bottom, the government has borne its burden. The evidence here shows that completely prohibiting Broadfield from consuming alcohol is the least restrictive means to further the government's compelling interest in protecting the community from him, preventing his recidivism, promoting his rehabilitation and successful completion of supervised release, and treating his alcoholism. For that reason, we need not opine on whether monitoring Broadfield's alcohol use

with a breathalyzer would be a "viable alternative." *Hobby Lobby*, 573 U.S. at 728.[4]

### B.  18 U.S.C § 3553(a)

Next, Broadfield argues the condition of his supervised release completely banning his use of alcohol is a greater deprivation of liberty than is necessary under § 3553(a), warranting modification.

As discussed, any modification of the defendant's original conditions of supervised release must, among other things, "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)." *Evans*, 727

---

[4] We pause to note that we have previously recognized "significant administrative problems for the probation office" associated with ensuring compliance with a condition of supervised release can be considered in deciding whether the government has proffered the least restrictive means to advance its compelling interest. *Israel*, 317 F.3d at 772; *see also United States v. Lafley*, 656 F.3d 936, 942 (9th Cir. 2011) ("Requiring continuous monitoring of [defendant's] marijuana use to determine whether the use was recreational or religious would place an unreasonable burden on a probation office."). Still, the government bears the burden to come forth with sufficient evidence to permit the district court to make such a factual finding, specific to the particular defendant, in order to meet the prong's demanding standard. *Hobby Lobby*, 573 U.S. at 728; *Holt*, 574 U.S. at 369 (noting that government's "say-so" is not enough to show that its proffered means to advance its compelling interest is the least restrictive); *Nunez v. Wolf*, 117 F.4th 137, 151–52 (3d Cir. 2024) (noting that "imagination" cannot stand in for evidence in the least restrictive means inquiry); *Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263, 273–74 (5th Cir. 2017) (reversing the district court's decision that the government had used the least restrictive means when "no evidence" supported the district court's factual finding); *Ali v. Stephens*, 822 F.3d 776, 793 (5th Cir. 2016) (same for government's "conjecture"); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 476 (5th Cir. 2014) (same).

F.3d at 733 (quoting *Ross*, 475 F.3d at 873). District courts have "wide discretion" in this arena. *Id.* at 732 (citation omitted).

On this score, Broadfield mostly puts forth the same arguments he made above to support his position. But, as we have already explained, the district court's decision to deny Broadfield's motion to modify in light of his particular history was more than reasonable.

One argument relevant to this challenge remains. Broadfield insists that we find the district court abused its discretion because the court did not lay out his history of alcohol abuse and related criminality in its oral decision. But the district court judge couched its decision in Broadfield's specific history, explaining that "[h]istorically, [Broadfield] is dangerous when he drinks," recalled that "[t]he last time he was in here … he admitted to drinking a bottle of liquor in 15 minutes," and stated, in line with Broadfield's attorney's statement at the revocation hearing, that Broadfield "doesn't deal with stress well." Those comments, coupled with the fact that the district court adopted the violation report's factual findings, which outlined Broadfield's long criminal history, alcohol disorder, and struggles with substance abuse, demonstrate the district court adequately considered Broadfield's specific history and characteristics when coming to its conclusion. *See United States v. Erving*, 164 F.4th 953, 965 (7th Cir. 2026) (noting we review a transcript "in context and as a whole"); *Martin*, 109 F.4th at 988 (explaining that appellate review of a revocation sentence is highly deferential); *Boultinghouse*, 784 F.3d at 1178 (noting our review focuses on the sentencing court's statements on the record to reflect that it considered the appropriate factors).

### III.    CONCLUSION

Prohibiting Broadfield from consuming alcohol is the least restrictive means to advance the government's compelling interest under RFRA and does not involve a greater deprivation of liberty than necessary for the purposes set forth in § 3553(a). Thus, we AFFIRM.